

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| ANITREA MONTGOMERY, | Civil Action No. |
| Plaintiff, | |
| vs. | |
| TJX COMPANIES, INC; THE MARMAXX OPERATING CORP d/b/a THE MARMAXX GROUP; MARSHALLS OF MA, INC; ROSA BURGOS; ANNA GRANDE and GEOFFREY DOE in their individual and professional capacities, | **COMPLAINT** **JURY TRIAL DEMAND** |
| Defendants. | |

Plaintiff Anitrea Montgomery, by her attorneys, Stoll Glickman & Bellina, alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.    Plaintiff Anitrea Montgomery ("Plaintiff") brings this action against Defendants TJX Companies, Inc. ("TJX"), The Marmaxx Group ("Marmaxx"), Marshalls of MA, Inc. ("Marshalls," together with TJX and Marmaxx the "Corporate Defendants"), Store Manager Anna Grande ("Grande"), Assistant Store Manager Rosa Burgos ("Burgos"), and Assistant Store Manager Geoffrey Doe ("Doe," last name unknown, together with Grande and Burgos, the "Individual Defendants") seeking damages and equitable relief for unlawful termination and/or interference with rights guaranteed under the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"), and disability discrimination and sexual harassment under the New York City Human Rights Law, Administrative Code, § 8-107 *et seq.* ("NYCHRL"), and the New York State Human Rights Law, N.Y. Executive Law, § 290 *et seq.* ("NYSHRL").

1

## JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction in this action, pursuant to 28 U.S.C. §§ 1331 and 1332(a) as Plaintiff is a citizen of New York.

3.   This Court has supplemental jurisdiction over Plaintiff's City and State law claims brought under the NYCHRL and NYSHRL pursuant to 28 U.S.C. § 1367.

4.   Since the unlawful conduct complained of occurred within the Southern District of New York, venue is proper within this district pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

5.   At all relevant times mentioned herein, Plaintiff is and was a resident of the County of Queens, City of New York and State of New York.

6.   At all relevant times mentioned herein, Defendant TJX, is and was a public company traded on the New York Stock Exchange maintaining its corporate headquarters at 770 Cochituate Road in the Town of Framingham and State of Massachusetts. Defendant TJX is incorporated under the laws of the State of Delaware and at all relevant times met the definition of Plaintiff's "employer" under all applicable statutes.

7.   At all relevant times mentioned herein, Defendant Marmaxx is and was a wholly-owned subsidiary of TJX incorporated under the laws of the State of Delaware. At all relevant times Defendant Marmaxx met the definition of Plaintiff's "employer" under all applicable statutes.

8.   At all relevant times mentioned herein, Defendant Marshalls is and was a wholly-owned subsidiary of TJX incorporated under the laws of the State of Massachusetts. At all

2

relevant times, Defendant Marshalls met the definition of Plaintiff's "employer" under all applicable statutes.

9.      Upon information and belief, Defendant Grande maintains a personal residence in the State of New York.  At all relevant times, Defendant Grande met the definition of Plaintiff's "employer" under all applicable statutes.

10.      Upon information and belief, Defendant Burgos maintains a personal residence in the State of New York.  At all relevant times, Defendant Burgos met the definition of Plaintiff's "employer" under all applicable statutes.

11.      Upon information and belief, Defendant Doe maintains a personal residence in the State of New York.  At all relevant times, Defendant Doe met the definition of Plaintiff's "employer" under all applicable statues.

## FACTUAL ALLEGATIONS

### Plaintiff Begins Her Employment for Defendants and Excels in Her Position

12.      Plaintiff repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

13.      From May 2012 until November 14, 2012, Plaintiff was employed by Defendant Marshalls in their 14th Street, New York, New York location (the "Store") as a Cashier.  Plaintiff and other entry level employees were also referred to as "Associates".

14.      Plaintiff's job performance was always satisfactory or better, including but not limited to being told, on multiple occasions, by Burgos, an Assistant Manager, that Plaintiff was "one of her best Associates" and that she "did not want to lose" Plaintiff as an employee.

15.      Defendant Burgos was Plaintiff's immediate supervisor and was directly responsible for evaluating Plaintiff's performance as a cashier.

3

16.     Defendant Doe was an Assistant Manager for the shoe department.  As a manager at the Store, he had authority over all lower level employees, including Plaintiff, regardless of whether the employees worked in the shoe department or another department.

## Defendant Doe Engages In A Campaign Of Sexual Harassment

17.     Beginning on or about late June 2012, and continuing until Plaintiff was terminated, Doe aggressively flirted with Plaintiff and directed inappropriate sexual comments at her.

18.     On multiple occasions, Doe stood behind Plaintiff while she was working at the cash register for the sole purpose of observing her physique, a fact which he otherwise made explicitly known to Plaintiff or which Plaintiff discerned from observing him observing her.

19.     When Doe was observing Plaintiff, he would make comments such as, in sum and substance, "you look good today," or "nice ass," as well as other comments about her physical appearance.

20.     Doe would regularly ask Plaintiff, "Do you have a man?" to which she would either ignore him and/or inform him that she did in fact have a boyfriend.

21.     Through her words and actions, Plaintiff made it known to Doe that his offensive comments and questions were unwelcome.   Plaintiff similarly made it clear to Doe that the manner in which he constantly ogled her was unwelcome and offensive to her.

22.     At all relevant points, Plaintiff was subjectively offended by and uncomfortable with Doe's campaign of sexual harassment.

23.     As a cashier, Plaintiff's performance was measured, in large part, by her ability to convince customers to register for a TJX Reward's Credit Card, regardless of whether this was a good indicator of achievement.

24.     The employees who registered the most number of customers for a TJX Rewards Cards, was rewarded by being named "number one employee" at that particular Marshalls location.

25.     On one occasion, on or about late June 2012, in an attempt to create an opportunity for an inappropriate quid-pro-quo proposition where Plaintiff would feel compelled to "thank" Doe, he lied and ranked Plaintiff as the most successful cashier in registering customers for TJK Rewards Cards ("Rewards Cards").

26.     To prove that he ranked Plaintiff as the most successful cashier in registering customers for the Rewards Cards, Doe called Plaintiff into his office to show her his computer screen where he inputted the information, at which time Plaintiff stated that she believed that David Author was actually the number one employee and that she was not even a close second or third.

27.     Doe than acknowledged that Plaintiff was working hard to sign customers up for Rewards Cards and suggested that was the reason he wanted to give her the title; however, Plaintiff knew that employees were ranked solely based on the number of Rewards Cards they were able to sign customers up for and not simply for trying to sign people up.

28.     Plaintiff was extremely uncomfortable with Doe awarding her this "title" since she knew, as did all of her co-workers, that she did not deserve it based on her performance; therefore, Plaintiff respectfully declined the award and informed Doe that she did not want him to award the title to her because she knew she was undeserving.

29.     It was clear to Plaintiff and her co-workers that Doe awarded her the honor because, as Chakiya Watts, another cashier put it, "He want(ed) to mess around and get in [Plaintiff's] pants."

30.     On or about July 2012, Doe pulled Plaintiff into his office because she "did not have a smile on her face like usual" and proceeded to discuss with Plaintiff some of the ongoing issues with the managers and front end coordinators mistreating the cashiers.

31.     At the conclusion of the abovementioned meeting, Doe told the Plaintiff, in sum and substance, to "just go home and have some good sex and you will be good tomorrow."

32.     Plaintiff was shocked by Doe's inappropriate comment, a fact which was made evident by her facial expression, prompting Doe to respond by asking, "What, you don't have sex?" while laughing.

33.     Plaintiff responded that she did not and left the office feeling insulted and degraded.

34.     On or about August 2012, Plaintiff began preparing to start college on Long Island, which was going to result in a much longer commute to work.

35.     Prior to classes starting in early September 2012, Plaintiff made an attempt to meet with Epps Roe ("Roe," last name unknown), the Assistant Manager who handled scheduling, regarding changes that needed to be made to her schedule.

36.     When Plaintiff attempted to meet with Roe he was unavailable. Instead, Doe agreed to review Plaintiff's schedule and suggested that she meet with him later that day, which she did.

37.     While meeting with Doe later that day, Plaintiff also inquired into whether or not she could be moved to the sales floor. Doe responded by informing Plaintiff that Marshalls was currently looking to hire for the Women's Department and that she should ask Roe for a transfer.

38.     On or about late August 2012, after Plaintiff's abovementioned meeting with Doe, she again attempted to discuss scheduling in light of her classes with Roe. Plaintiff felt the need

6

to have this conversation with Roe despite already having met with Doe because communication between and amongst managers was extremely poor.

39.    During the above mentioned meeting with Roe, Plaintiff told him that she had previously discussed a transfer to the sales floor with Doe and that he recommended she formally put in for the request with Roe.

40.    Roe responded to Plaintiff's request by asking her whether she knew Doe before starting at Marshalls. Plaintiff said, "No," and then inquired as to why he was asking. Roe said he was attempting to ascertain why Doe was making false promises and giving special treatment to several female store employees, including Plaintiff.

41.    Roe than told Plaintiff that she was "a very attractive young lady" and that he was aware that Doe "liked her."

42.    At this point Roe proceeded to beg Plaintiff to "mess around" with Doe in order to "see how far he would take it." Roe explained, unconvincingly, that he wanted to "catch" Doe acting inappropriately with a female employee.

43.    Plaintiff immediately rejected the inappropriate proposition. Further, Plaintiff was aware that it was against Marshalls' Store Policy for a manager to have personal relations with a store employee and wanted nothing to do with Roe's scheming.

44.    Roe's request created an intimidating, hostile and offensive work environment in which Plaintiff was forced to refuse requests that she submit to sexual propositions made by a manager.

45.    On or around September 2012, Plaintiff was working at the register when Doe approached her and asked her to "go for a walk with (him)" and that she had "a nice ass."

7

46.     Plaintiff was visibly shocked by Doe's rude and harassing comment prompting Doe to say, "Just joking, but you do have a fatty."

47.     Plaintiff was so uncomfortable by these comments that she felt compelled to leave work early in order to avoid the continued sexual harassment.

48.     As a result of the continued sexual harassment Plaintiff faced while working as a cashier at the Store, she has suffered from severe emotional distress and sought treatment from a trained mental health clinician.

## Defendants Discriminate Against Plaintiff Based On Her Disability and Terminate and Interfere With Her Rights Under the FMLA.

49.     Plaintiff suffers from osteoporosis in her back and hip, which causes pain and discomfort in those areas.

50.     On or about November 6, 2012, Plaintiff went to her physician for an appointment because she was once again experiencing pain in her lumber spine and hip due to a slip and fall almost two (2) months earlier that was still causing her pain and discomfort, which she learned was because of osteoporosis.

51.     Plaintiff's physician advised her to take a medical leave of absence from November 6, 2012 through November 18, 2012.

52.     On or about November 6, 2012, when Plaintiff returned home after the abovementioned doctor's appointment, she telephoned the Store and spoke directly with Doe regarding her condition and her physician's recommendation that she take intermittent medical leave.

53.     During the telephone call, Doe informed Plaintiff that the mother of his children also suffered from osteoporosis.

8

54.     Doe told Plaintiff that she should call back the following day, November 7, 2012, to inform Anna Grande ("Grande"), the Store Manager, about the medical leave.

55.     On or about November 7, 2012, the day after Plaintiff's doctor's appointment and telephone conversation with Doe, she called the Store and spoke with Grande about her medical leave as instructed. During her telephone conversation with Grande, Grande confirmed that Plaintiff's medical leave was approved and informed her that all her absences while on medical leave would be excused. Grande ended the conversation by telling Plaintiff to "feel better."

56.     During the November 7th telephone call with Grande, Plaintiff suggested faxing all the required documentation from Plaintiff's physician to Marshalls; however, Grande informed Plaintiff that the store did not have a fax machine and therefore Plaintiff should just bring in her documentation when she returned to work.

57.     Upon information and belief, Grande immediately informed Burgos that Plaintiff had been approved for FMLA leave.

58.     On or about November 9, 2012, while Plaintiff was on medical leave, she was contacted by a co-worker who informed her that she was on the schedule for that day and was written up as a "no call, no show."

59.     Plaintiff immediately telephoned Burgos to remind her that she was approved for medical leave through November 18, 2012 and that she had previously called to inform Marshalls' management of this on November 6, 2012.

60.     During this phone conversation, Burgos apologized for the mistake, assured Plaintiff that any additional absences while on medical leave would be excused and simply asked Plaintiff to bring her medical records to Marshalls at the end of her leave because there was no fax machine. Burgos ended the conversation by saying, "most importantly to feel better."

61. On or about November 19, 2012, Plaintiff called the Store to inquire about her schedule. Plaintiff spoke to another Assistant Manager, who informed her that she was no longer on the schedule. Plaintiff informed the individual that she was on medical leave, and was not aware of any reasons why she would not be on the calendar.

62. On or about November 19, 2012, after the abovementioned telephone call Plaintiff went to the Store to figure out what had happened.

63. While at the Store, on or about November 19, 2012, Plaintiff learned that, despite granted unpaid medical leave for the period between November 6, 2012 and November 18, 2012, Plaintiff was placed on the schedule for shifts on November 9, 2012, November 10, 2012, and November 14, 2012, and that all three (3) of the shifts that she was scheduled for, and subsequently missed due to her medical leave, were written down as "no call, no shows."

64. That same day, November 19, 2012, Plaintiff attempted to (1) pick up her check for the week prior to her medical leave and for the week of Super Storm Sandy, for which all employees were paid; and (2) to submit her medical records as requested by Burgos and Grande. However, the manager on duty at the time refused to acknowledge or accept these records and told Plaintiff she would need to speak with Burgos directly.

65. On or about November 20, 2012, Plaintiff telephoned Burgos to ask why the absences during Plaintiff's approved medical leave, which were FMLA eligible absences, had been classified as "no call, no shows."

66. During the November 20th telephone conversation, Burgos told Plaintiff, in sum and substance, she was being terminated because "you haven't been at work; you abandoned the job."

10

67.    Following Plaintiff's November 20th telephone conversation with Burgos, she called Grande, who confirmed that Marshalls was informed of, and approved Plaintiffs medical leave.

68.    Defendants extended FMLA leave to Plaintiff notwithstanding her non-eligibility, thereby extending to Plaintiff the same protections from retaliation and/or interference with the rights afforded under the FMLA as an individual who met all of the FMLA's eligibility criteria.

69.    Specifically, Defendants' granting of Plaintiff's requested medical leave effectively waived any requirement that she have worked for at least 12 months for the employer and have worked for at least 1,250 hours during the 12 months immediately before the date the FMLA leave begins.

70.    On or about November 14, 2012, Defendants terminated Plaintiff for failing to call in her absences on November 9, 2012, November 10, 2012 and November 14, 2012, which constitutes misconduct that could result in discharge.

71.    On or about March 4, 2013 Plaintiff had a fair hearing for unemployment benefits with the New York State Department of Labor ("DOL") to review the initial determination made by the DOL "disqualifying [Plaintiff] from receiving benefits on the basis that [Plaintiff] lost employment through misconduct."

72.    During the abovementioned fair hearing, Doe, who was present as the representative for Defendants, perjured himself on two separate instances:

a)    First, Doe was untruthful to Administrative Law Judge David Kogelman (the "ALJ") when he stated, in sum and substance, "that the time-clock used in the Store could not be altered by any manager."

b) Second, Doe told the ALJ that he informed Plaintiff that she had not worked a sufficient amount of time to be eligible for medical leave; however, when Plaintiff confronted Doe after the fair hearing he backtracked and said, in sum and substance, that he "thought" he had told her she was not eligible when Plaintiff originally requested the time off, not that he had unequivocally told her such information.

73.     On or about April 4, 2013 the ALJ overruled the abovementioned initial determination and held that Plaintiff was entitled to receive unemployment benefits.

## AS AND FOR A FIRST CAUSE OF ACTION

### GENDER DISCRIMINATION -- SEXUAL HARASSMENT IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
### (Administrative Code § 8-107 et seq.)

74.     Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

75.     Defendant discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by denying to her equal terms and conditions of employment, including but not limited denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment.

76.     Defendant discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile and/or offensive work environment that included, among other things, subjecting Plaintiff to severe and pervasive discrimination and harassment.

77.     A specific basis exists for imputing the objectionable conduct to the employer because the perpetrators of the harassment themselves held managerial positions.

78.     The discriminatory conduct was frequent and severe.

12

79.     The discriminatory conduct involved public humiliation in front of Plaintiff's colleagues and customers.

80.     The discriminatory conduct included being subjected to unwelcomed sexual advances.

81.     The discriminatory conduct involved continued offensive utterances.

82.     The discriminatory conduct included verbal harassment of a sexual nature.

83.     The discriminatory conducted included a quid pro quo exchange of a job benefit in hopes of Plaintiff becoming receptive to sexual advances.

84.     The discriminatory conduct included requests that Plaintiff engage in unwanted sexual conduct for the purpose of "trapping" other managers in the commission of bad acts.

85.     The discriminatory conduct interfered with Plaintiff's work performance.

86.     By the acts and practices described above, the Defendant, directly and/or through its employees and/or agents, subjected Plaintiff to discrimination in violation of NYCHRL.

87.     Doe, who exercised managerial/supervisory control over Plaintiff, engaged in discriminatory acts and failed to take corrective action; as such, the Defendant is liable.

88.     As a direct or proximate result of the Defendant's unlawful conduct, Plaintiff has suffered irreparable injuries and monetary damages and will continue to do so unless the Court grants relief.

## AS AND FOR A SECOND CAUSE OF ACTION

## GENDER DISCRIMINATION -- SEXUAL HARASSMENT IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### (N.Y. Executive Law § 290 *et seq.*)

89.     Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

90.    Defendant discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by denying to her equal terms and conditions of employment, including but not limited denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment.

91.    Defendant discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile and/or offensive work environment that included, among other things, subjecting Plaintiff to severe and pervasive discrimination and harassment.

92.    A specific basis exists for imputing the objectionable conduct to the employer because the perpetrators of the harassment themselves held managerial positions.

93.    The discriminatory conduct was frequent and severe.

94.    The discriminatory conduct involved public humiliation in front of Plaintiff's colleagues and customers.

95.    The discriminatory conduct included being subjected to unwelcomed sexual advances.

96.    The discriminatory conduct involved continued offensive utterances.

97.    The discriminatory conduct included verbal harassment of a sexual nature.

98.    The discriminatory conducted included a quid pro quo exchange of a job benefit in hopes of Plaintiff becoming receptive to sexual advances.

99.    The discriminatory conduct included requests that Plaintiff engage in unwanted sexual conduct for the purpose of "trapping" other managers in the commission of bad acts.

100.    The discriminatory conduct interfered with Plaintiff's work performance.

101. By the acts and practices described above, the Defendant, directly and/or through its employees and/or agents, subjected Plaintiff to discrimination in violation of NYSHRL.

102. Doe, who exercised managerial/supervisory control over Plaintiff, engaged in discriminatory acts and failed to take corrective action; as such, the Defendant is liable.

103. As a direct or proximate result of the Defendant's unlawful conduct, Plaintiff has suffered irreparable injuries and monetary damages and will continue to do so unless the Court grants relief.

## AS AND FOR A THIRD CAUSE OF ACTION

### TERMINATION IN VIOLATION OF THE
### FAMILY AND MEDICAL LEAVE ACT,
### (29 U.S.C. § 2615)

104. Plaintiff hereby repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same, as if fully set forth herein.

105. Plaintiff was an eligible employee under the FMLA because Defendants waived the requirement that she be employed for at least twelve months and have worked for at least 1,250 hours in the previous twelve month period.

106. Defendants are an employer under the FMLA since it employs more than fifty (50) employees.

107. Plaintiff was entitled to FMLA leave to attend to her osteoporosis.

108. Plaintiff is qualified for the position at issue based, inter alia, on her skills and her accomplishments while employed by Defendants, as supported by her positive reviews.

109. Plaintiff was subjected to an adverse employment action because she was selected by Defendants for termination of her employment.

110.    Defendants discharged and or disciplined Plaintiff after she requested FMLA leave or otherwise placed Defendants on notice of her FMLA qualifying need for leave.

### AS AND FOR A FORTH CAUSE OF ACTION

## INTERFERENCE WITH RIGHTS PURSUANT TO THE FAMILY AND MEDICAL LEAVE ACT, (29 U.S.C. § 2615)

111.    Plaintiff hereby repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same, as if fully set forth herein.

112.    Defendants interfered with Plaintiff's entitlement to FMLA benefits by discharging and or disciplining Plaintiff after either requesting FMLA leave or otherwise placing Defendants on notice of her FMLA qualifying need for leave.

113.    Based on the foregoing, the Plaintiff attempted to exercise her rights under the FMLA, to recover from osteoporosis related pain and was disciplined and terminated as a direct result.

114.    As a result, Plaintiff was unable to exercise her rights pursuant to the FMLA due to the Defendants' conduct.

### FOR A FIFTH CAUSE OF ACTION

## DISABILITY DISCRIMINATION – FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, (Administrative Code § 8-107 *et seq)*

115.    Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

116.    At all relevant times, Plaintiff suffered from osteoporosis, which constitutes a disability under the NYCHRL.

16

117.    Plaintiff informed Defendants of her disability and requested a reasonable accommodation of time off, which would enable her to return to work and not exacerbate her condition.

118.    Defendants failed to provide Plaintiff with a reasonable accommodation.

119.    Defendants terminated Plaintiff while she was on temporary disability leave, which was granted by Defendants, following her doctor's recommendation that she take reasonable time off to enable her to fully recover.

120.    As a direct or proximate result of Defendant's actions, Plaintiff suffered irreparable injuries and monetary damages and will continue to do so unless the Court grants relief.

## AS FOR A SIXTH CAUSE OF ACTION

### DISABILITY DISCRIMINATION
### IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW,
### (Administrative Code § 8-107 *et seq.*)

121.    Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

122.    At all relevant times, Plaintiff suffered from osteoporosis, which constitutes a disability under the NYCHRL.

123.    Plaintiff informed Defendants of her disability and requested a reasonable accommodation of time off, which would enable her to return to work and not exacerbate her condition.

124.    Defendants failed to provide Plaintiff with a reasonable accommodation and terminated as a result of her request and for her disability or perceived disabling condition.

17

125.    On the contrary Defendants told Plaintiff they would allow her the time off she requested, but then scheduled her for shifts during that time period and terminated her for being a "no call, no show."

126.    As a direct or proximate result of Defendant's actions, Plaintiff was terminated as a result of her request for a reasonable accommodation and suffered irreparable injuries and monetary damages and will continue to do so unless the Court grants relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION—FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### (N.Y. Executive Law § 290 *et seq.*)

127.    Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

128.    At all relevant times, Plaintiff suffered from osteoporosis, which constitutes a disability under the NYSHRL.

129.    Plaintiff informed Defendants of her disability and requested a reasonable accommodation of time off, which would enable her to return to work and not exacerbate her condition.

130.    Defendants failed to provide Plaintiff with a reasonable accommodation.

131.    Defendants terminated Plaintiff while she was on temporary disability leave, which was granted by Defendants, following her doctor's recommendation that she take reasonable time off to enable her to fully recover.

132.    As a direct or proximate result of Defendant's actions, Plaintiff suffered irreparable injuries and monetary damages and will continue to do so unless the Court grants relief.

## AS FOR A EIGHTH CAUSE OF ACTION

### DISABILITY DISCRIMINATION
### IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW,
(N.Y. Executive Law § 290 *et seq.*)

133.   Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

134.   At all relevant times, Plaintiff suffered from osteoporosis, which constitutes a disability under the NYSHRL.

135.   Plaintiff informed Defendants of her disability and requested a reasonable accommodation of time off, which would enable her to return to work and not exacerbate her condition.

136.   Defendants failed to provide Plaintiff with a reasonable accommodation and terminated as a result of her request and for her disability or perceived disabling condition.

137.   On the contrary Defendants told Plaintiff they would allow her the time off she requested, but then scheduled her for shifts during that time period and terminated her for being a "no call, no show."

138.   As a direct or proximate result of Defendant's actions, Plaintiff was terminated as a result of her request for a reasonable accommodation and suffered irreparable injuries and monetary damages and will continue to do so unless the Court grants relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and issue:

(i)   An award to Plaintiff for her actual damages in an amount to be determined at trial for lost wages and benefits, including an award of back pay and front pay;

(ii)    An award to Plaintiff of compensatory damages in an amount to be determined at

trial for the humiliation, mental anguish, pain and suffering and emotional distress

sustained by her;

(iii)    An award of punitive damages to deter future conduct by the Defendant, in an

amount to be determined at trial;

(iv)    An award to Plaintiff of the costs of this action, including reasonable attorneys'

fees to the fullest extent permitted by law; and

(v)    Such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury.

DATED:    September 17, 2013
                 Brooklyn, New York

Christopher Q. Davis
Rachel M. Haskell
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY 11217
(718) 852-3710

*Attorneys for Plaintiff Anitrea Montgomery*